# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 10, 2003

## STATE OF TENNESSEE v. ANDRE EDWARD HICKS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-B-641     Cheryl Blackburn, Judge**

---

**No. M2003-00818-CCA-R3-CD - Filed April 2, 2004**

---

The Appellant, Andre Edward Hicks, was convicted after a trial by jury of aggravated robbery and was sentenced as a persistent offender to thirty years in the Department of Correction. On appeal, Hicks raises the following issues for our review: (1) whether the evidence was sufficient to support the verdict and (2) whether his sentence was proper. After a review of the record, the judgment of the Davidson County Criminal Court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Ross E. Alderman, District Public Defender; Jeffrey A. DeVasher, Assistant Public Defender (on appeal); and Joan A. Lawson and James McNamara, Assistant Public Defenders (at trial), for the Appellant, Andre Edward Hicks.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kim R. Helper, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On December 6, 2000, Steven Treece was working as the store manager for the Tennessee State University (TSU) bookstore in Nashville. At approximately noon, Larita Lyons, the store's bookkeeper, informed Treece that he needed to go to the bank because the "store needed some cash." It was a "buy-back" period at the school, which meant that the store needed cash to "buy-back" textbooks from students. At approximately two o'clock, Treece left the bookstore to go to the bank with Scott Pearson, the store's general merchandise manager. Treece did not tell anyone, even

Pearson, that they would be going to the bank. The two went to the AmSouth Bank on Clarksville Highway and received $30,000 in cash, which Treece placed in a backpack. They then returned to the store and parked in the loading dock area.

Treece described the route to the bookstore, "From the parking area, there is a ramp that you walk up. You go through a set of double doors, go down a short hallway, and turn left, and then behind, kind of tucked to the side is our elevator door." According to Treece, no other office or business uses that elevator. When Treece turned the corner to reach the elevator, he "saw a figure that was dressed all in black, and he was leaned up against the elevator doors." The man was wearing a mask over his face, which exposed the "bridge" between his eyes. Treece described the man as "[s]ix-one, brown complected, maybe 180 pounds[.]" The man pulled a gun on Treece and pointed it at his chest. Out of the corner of his eye, Treece saw Pearson, who had not yet rounded the corner, running away. Treece put his hands up and gave the person the backpack filled with cash. The robber initially told Treece to get on his knees, but the elevator door opened, and the robber told him to get on the elevator. Treece complied, and the robber reached into the elevator and pressed the second floor button. As the doors were closing, the person squeezed the trigger twice, although the gun did not fire.

As soon as the elevator door opened on the second floor, Treece saw TSU Officer Frank White and told him that he had just been robbed. White "jumped" on the elevator, and the two went downstairs to look for the robber. According to Treece,

> [w]hen we came out, when we hit the parking lot, you can either go to the right and go behind the residence halls or you can go diagonally to come in front of them and end up in the parking lot and so we came diagonally, running toward 33rd Avenue.

Pearson, who was trying to phone the police, saw the two men running across the campus and joined them in their pursuit. As they ran through a parking lot, they observed a man "dressed in the same clothes" as the robber. Treece stated, "He was, he wasn't running full speed, but he was moving really quickly, and he was looking side to side at the point that I first saw him." Treece identified the man, who now had his ski mask "rolled" up, as the Appellant. Treece told Officer White he knew who it was. Treece was familiar with the Appellant because he was Ms. Lyons' boyfriend. Treece explained, the Appellant "sometimes would drop [Lyons] off and pick her up so I would see him twice in the same day, so I saw him several times throughout the course of a couple of years." Pearson testified that he looked at the man and observed that he was dressed "exactly the same" as the person who he saw robbing Treece.

After the Appellant looked back and saw Treece, "he sped completely across the street." The group then lost sight of the Appellant. As they stood in the street, they saw "Ms. Lyons' rental car make a U-turn and go back the opposite way." At that point, Treece told both Officer White and Pearson that the robber was the Appellant. Ultimately, the group went back to the store. After Lyons was informed of the robbery, she stated that she had not spoken with the Appellant since that morning. However, a subsequent review of her cell phone records indicated otherwise.

On April 23, 2001, the Appellant was indicted for aggravated robbery and attempted first degree murder. A superseding indictment was returned on April 15, 2002, which charged the Appellant, along with Larita Lyons, in count 1 with aggravated robbery[1] and, in count 2, the Appellant was charged individually with aggravated assault. After a trial by jury, the Appellant was found guilty as indicted, and the two counts were thereafter merged into a single conviction for aggravated robbery. On December 18, 2002, the Appellant was sentenced to thirty years in the Department of Correction as a range III offender. His motion for new trial was denied, and this appeal followed.

## ANALYSIS

### I. Sufficiency of the Evidence

The Appellant contends that the evidence was insufficient to support his conviction for aggravated robbery, a class B felony. Specifically, he argues that Treece's "identification of him is inherently suspect." The Appellant asserts that Treece's credibility is suspect based upon the following rationale:

> Treece, who knew the [Appellant] prior to the incident acknowledged that he did not recognize the robber as the [Appellant] during the robbery, even though he could see a portion of the robber's face and the robber spoke to him. Instead, Treece testified that while he, his co-worker Scott Pearson, and TSU Officer Frank White were pursuing a man dressed like the robber shortly after the robbery, the man turned his head for an instant, he (Treece) recognized him as the [Appellant]. . . . The [Appellant] submits there is reasonable doubt that [Treece] could identify the man based upon such a brief glimpse from [50 to 60 yards] away.
>
> . . .
>
> Treece and Pearson's observations of the robber and attendant circumstances during the robbery itself also call Treece's identification into question. Pearson described the robber as being "light complected," but acknowledged that he would not describe the [Appellant] as having a light complexion. Treece described the weapon used by the robber as a black automatic handgun. Pearson described the gun as being pewter in color, and testified that the gun was not black.

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

---

[1]The Appellant and Lyons were tried jointly, and Lyons was convicted of the lesser included offense of robbery.

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. 1999); *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). Instead, the Appellant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

As indicted, aggravated robbery is defined as robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. Tenn Code Ann. § 39-13-402(a)(1) (2003). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2003).

In this case, the Appellant's sufficiency argument is based upon the credibility of the victim, who was the only witness to identify the Appellant as the robber. The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Inconsistency, inaccuracy, and omissions in the description of a defendant by a witness who is otherwise able to positively identify the defendant are questions for the jury to consider in determining the weight to be given the testimony. *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999), *perm. to appeal denied*, (Tenn. 1999). Further, although inconsistencies or inaccuracies may make the witness a less credible witness, the jury's verdict will not be disturbed unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the Appellant's guilt. *Id.* The verdict of the jury in this case is supported by the evidence. The positive identification testimony of the witness, Steven Treece, sufficiently supports the Appellant's conviction; his testimony is not so improbable or unsatisfactory as to create a reasonable doubt of the Appellant's guilt.

## II. Sentencing

The Appellant argues that the thirty-year sentence as imposed by the trial court was excessive. He contends that the trial court misapplied "at least four" enhancement factors. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the

trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives, if so eligible; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102, -103, -210 (2003); *Ashby*, 823 S.W.2d at 168. Furthermore, we emphasize that the Appellant bears the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

In determining the Appellant's sentence, the trial court considered five enhancement factors: (2) The Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (3) The Appellant was a leader in the commission of the offense; (7) The amount of property taken from the victim was particularly great; (9) The Appellant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and (14) The felony was committed while on release status from a prior felony conviction. Tenn. Code Ann. § 40-35-114(2), (3), (7), (9), (14) (2003). Of the five, the trial court gave no weight to factor (7)[2] and great weight to factors (2), (9), and (14).

The Appellant submits that enhancement factor (2), a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, was inapplicable under the facts of this case. Specifically, he argues that:

> The [Appellant] was sentenced as a Range III, persistent offender. All five (5) of his prior felony convictions, for three (3) Class C felonies and two (2) Class D felonies, were necessary to sentence him as a Range III persistent offender under T.C.A. §40-35-107(a)(1). The [Appellant's] remaining convictions are for the misdemeanor offenses of evading arrest, resisting a stop, driving with a suspended license, simple assault, and simple possession of drugs. The [Appellant] submits that his prior misdemeanor record, while not insignificant, is not so extensive as to constitute "a previous history of criminal convictions or criminal behavior" under §40-35-114(2). Alternatively, the [Appellant] contends that even if this Court finds §40-35-114(2) to be applicable, the factor is entitled to little weight.

The trial court, in applying this factor, made the following findings:

> Clearly, all his felony convictions are used up to make his range of punishment; however, we have quite a few other things that I can look at, even though they may be misdemeanors, they are not all just minor misdemeanors. We have evading arrest, resisting arrest, driving without a drivers license. We have

---

[2]Apparently, because the trial court gave factor (7) no weight, the Appellant does not challenge its application; thus, review of this factor is unnecessary.

weapons offenses, driver license, assault, which is an 11/29 sentence. Again, driving on no driver's license. Then we have a possession of drugs which was 11/29, and then the criminal convictions in 96-D-1976.

All right, so all those would make him, factor number two apply. In addition to that, I think I can also consider the fact that he was in possession of a weapon as a convicted felon which is separate and apart from the fact that the gun was used to make the aggravated robbery, he is a convicted felon who is carrying around a weapon so that is an issue that I can consider also, so therefore, factor number two applies.

While misdemeanor convictions do not generally carry as much weight as felony convictions, the Appellant's history of misdemeanor convictions is extensive. The Appellant has been convicted of thirteen separate misdemeanor offenses, including evading arrest, resisting arrest, weapons offenses, assault, possession of drugs, and multiple driving offenses. Furthermore, as noted by the trial court, the Appellant's criminal behavior, in connection with this offense, includes the carrying of a weapon. Pursuant to Tennessee Code Annotated § 39-17-1307 (2003), the Appellant, a convicted felon, was prohibited from possessing a weapon. Such criminal history and behavior adequately supports enhancement factor (2).

The Appellant argues that enhancement factor (3) should not have been applied because his co-defendant, not he, was the leader in the offense. This court has held that "enhancement for being a leader in the commission of an offense does not require that the Appellant be the sole leader but only that he be 'a' leader" in the commission of the offense. *State v. Hicks*, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993) (citation omitted). As noted by the trial court, the Appellant was "the one who actually pulled the gun, made Mr. Treece get back in the elevator, pointed it at him such that Mr. Treece thought that his life was over[.]" While the co-defendant led the preparation, the Appellant clearly led the perpetration. *Id*. at 731. Based upon these facts, we find the Appellant was a leader in the commission of these offenses and, therefore, application of enhancement factor (3) was proper.

The trial court also applied enhancement factor (9), finding that the Appellant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. The Appellant contends that application of this factor was improper because:

The presentence report in this case reflects that the [Appellant] was convicted of driving on a suspended license in 1997, and that the ultimate disposition of this case was "probation revoked, TS, $50 fine." The record does not establish that the [Appellant] was ever given or granted a suspended sentence, and the State made no effort to document that the [Appellant] was ever placed on probation, or had his probation revoked in that case.

-6-

The Appellant's argument is misplaced. As previously noted, the trial court was required to consider the information in the presentence report. Tenn. Code Ann. § 40-35-210(b)(2). Moreover, the Appellant entered no objection to the admission of the report. The presentence report reflects that the Appellant was convicted of assault on June 25, 1997, and was placed on probation for eleven months and twenty-nine days following suspension of the sentence. On November 1, 1997, the Appellant was arrested for driving on a suspended license, for which he was convicted on May 14, 1998. The sentence imposed was "probation revoked, TS, $50 fine." Accordingly, we conclude that the information within the presentence report was properly utilized to enhance the sentence. Application of enhancement factor (9) was proper.

Regarding enhancement factor (14), the felony was committed while on release status from a prior felony conviction, the Appellant argues that:

> [T]here is insufficient proof in the record to support a finding that he was on parole or probation at the time of the offense[.] . . . Nothing in the presentence report establishes that the Appellant was on parole or probation at the time of the commission of the offense in this case. . . . Absent some specific proof that he was on parole at the time of the commission of the offense, the [Appellant] submits that the trial court erred in applying §40-35-114(14).

The trial court based its application of this factor upon the following findings:

> Factor number 14, I understand what you are saying, Ms. Lawson, there is no proof in the record, but there is proof in the record, and that is if you look at his convictions in the two, in 98-B-1228, those events occurred on 12/23 of '97, so even if he is in jail from 12/29/97 to when this robbery took place, which is 12/6 of ['00], so you've got right at three years. There is no way you can serve a five-year sentence, even all the kind of credit, within that period of time, so he is either on parole or probation, given the facts of the other offenses that occurred in '97, these occurred in 2000. A three-year time span, his sentence was five years. He's got to be on some sort of release.

Again, we note that the Appellant did not object to the admission of the presentence report, and the court was required to consider the information contained therein. The presentence report and the copies of the judgment of conviction forms received at the sentencing hearing established that the Appellant was arrested on December 1, 1997, and charged with aggravated robbery and especially aggravated robbery. On April 1, 1998, he was again charged with a separate offense, which is not defined. As a result of these three charges, the Appellant, on October 15, 1998, pled guilty to two counts of facilitation of aggravated robbery and one count of attempted aggravated robbery and received a sentence of five years in the Davidson County Workhouse. The trial court reasoned that, even if the Appellant was in jail from December of 1997 and released just prior to commission of the present offense in December of 2000, only three years had passed, and it was impossible for the Appellant to have served his entire five-year sentence within that time-span. The

trial court's logic is sound that the Appellant was on release status at the time the offense was committed. *State v. Elton Bowers*, No. 02C091-9308-CR-00180 (Tenn. Crim. App. at Jackson, Oct. 12, 1994). Accordingly, we conclude that Appellant's release status was properly used to enhance his sentence.

The application of enhancement factors (2), (3), (9), and (14) are sufficient to justify the imposition of the maximum thirty-year sentence. No mitigating factors were found by the court, and a review of the record does not reveal any that should have been applied. When there are enhancement factors and no mitigating factors, there is no presumptive sentence and the court may sentence above the minimum in the range. Tenn. Code. Ann. § 40-35-210(d). The Appellant was convicted of aggravated robbery, a class B felony, which carries a range of twenty to thirty years for those sentenced as persistent offender. *See* Tenn. Code Ann. § 40-35-112(c) (2003). Of particular weight in this case is the Appellant's prior criminal history, his previous unwillingness to comply with the conditions of a sentence involving release in the community, and the fact that he was on release at the time the instant offense was committed. Under these circumstances, the trial court was clearly justified in imposing a sentence of thirty years for aggravated robbery. The Appellant's sentencing issues are without merit.

## CONCLUSION

Based upon the foregoing, we find that the evidence presented at trial was sufficient to support the Appellant's conviction for aggravated robbery beyond a reasonable doubt. Furthermore, the thirty-year sentence imposed by the trial court was not excessive as to length. Accordingly, the judgment of the Davidson County Criminal Court is affirmed.

_____

DAVID G. HAYES, JUDGE

-8-